11 CV 7996

```
            UNITED STATES DISTRICT COURT
            SOUTHERN DISTRICT OF NEW YORK
```

------------------------------X

*Jury Trial Demanded*

Delois Blakely,          :   COMPLAINT
      Plaintiff,
                         :

        v.               :   Civil Action No.

Walt Disney Motion
Pictures Group, Inc.,
Stage Entertainment,
Sony Pictures            :
Entertainment, Inc.,
Scott Rudin, and Paul
Rudnick,                 :
      Defendant(s).
                         :

------------------------------X



RECEIVED NOV 09 2011 PRO SE OFFICE

NOW COMES the plaintiff, Delois Blakely, appearing pro se, and for a complaint against the defendants above named, alleges on the basis of her own knowledge with respect to herself and her own conduct, and upon information and belief, as follows:

## SUMMARY

1. This is a lawsuit for damages and injunctive relief arising from defendants' breach of contract, breach of confidential relationship, misappropriation and unjust enrichment, unfair competition, false representation,

violation of right of publicity and other wrongs in violation of federal and state law in connection with defendants' development and production of the motion picture <u>Sister Act I</u>, <u>Sister Act II</u>, and the Broadway musical <u>Sister Act</u> (collectively referred to here as <u>Sister Act</u>). <u>Sister Act</u> is substantially based upon the true persona and life experiences of Delois N. Blakely who was a young, Black, singing nun serving the street people and youths of Harlem, New York, and who had an intimate friendship with Bumpy Johnson, a notorious Harlem gangster, who hid in Blakely's convent when his life was threatened on the streets. Her unconventional manners in the convent and personal philosophy of bringing the church to the streets, ultimately resulted in Blakely leaving the convent to serve the people on a 24-hour basis. She has subsequently become an international human rights advocate and Harlem icon affectionately known as Queen Mother Dr. Delois Blakely.

<u>JURISDICTION and VENUE</u>

2. This Court has jurisdiction over the subject matter pursuant to:

(a) 28 U.S.C. §1331, §1337(a), and §1338(a);

(b) The Lanham Act, 15 U.S.C. §1117 and §1125; and

(c) 28 U.S.C. §1367, §1338 (b), and the doctrines of ancillary and pendent jurisdiction for all other claims.

3. Venue is proper in the Southern District of New York pursuant to the provisions of 28 U.S.C. §1391 (b).

GENERAL ALLEGATIONS

4. On June 9, 1987, Delois Blakely entered into an exclusive agreement with Bertha Klausner of Bertha Klausner International Literary Agency, Inc. (Bertha) for the sale, lease, or license of Ms. Blakely's autobiography <u>The Harlem Street Nun</u> for literary, dramatic or musical use.

5. Bertha reached out to numerous parties with potential interest in the story. Amongst those contacted was defendant Tri Star Pictures (Sony Pictures Entertainment). The standard outreach packet was sent including a detailed three page synopsis of Ms. Blakely's autobiography, co-written by Frank Harris, III.

6. On January 27, 1988, Cynthia Bowles, a Tri-

Star producer, mailed a letter to Bertha stating she was: "extremely interested in obtaining the rights to the story you sent us regarding Delois Blakely. We would like to option the rights to Delois' life story for an 'If/Come' deal through Tri Star". It stated that Tri Star was "ready to pursue Ms. Blakely's rights immediately," and that Bertha should give her a call so that they could "proceed with Ms. Blakely's deal".

7. On February 26, 1988, in follow-up to a lengthy phone call with Bowles the previous day during which Delois was asked to share more details about her life, Bowles mailed a letter to Ms. Blakely thanking her "for being so generous with your time." Bowles also expressed that Ms. Blakely's life story "has (thus far!) been remarkable, to say the least!" She further expressed that Tri Star's "Business and Affairs Department will be contacting Bertha Klausner regarding an option to your story". She also warned that due to a merger between Columbia and Tri Star, "the processing of the deal might be delayed a little."

8. On December 3, 1988, Bertha sent a letter to Bowles inquiring about the decision for Ms. Blakely's

4

story. A sample writing had been sent to prove that Frank Harris, "can be considered as the writer for the film".

9. Ms. Blakely was never presented with an option contract to sign with Tri Star. Her literary agent agreement with Bertha expired in June 1989.

10. By 2002, Ms. Blakely had become aware of the Sister Act motion picture when she saw a DVD cover depicting Whoopi Goldberg dressed as a nun. She thought the character resembled herself, but it did not occur to her that it might be a film based on her own persona and life experiences.

11. By August 9, 2004, Ms. Blakely began to grow curious about the Black nun on the cover of the Sister Act DVD. She enlisted help to search the Internet to see if any of the contacts on her letters from Tri Star were affiliated with the Sister Act film. Further, she searched to see if any of the Sister Act film executives were associated with Tri-Star. She found no connections.

12. Noting that a Joseph Howard was the Sister Act screenplay writer, she searched the Library of Congress

Copyright database to see when Joseph Howard registered the Sister Act script. No such registration existed.

13. She searched to see if she was mentioned anywhere on the Internet as the source of the story. She found stories that suggested that the play was a work of fiction written for a white nun, to be played by Bette Middler.

14. On February 28, 2007, Ms. Blakely became curious about Whoopi Goldberg's nun character again. This time she had access to a Lexis-Nexis database. Various news article searches were done to determine if there were any associations between Tri Star and <u>Sister Act</u> film executives. There was a <u>Daily Variety</u> article dated September 8, 1992 written by Claudia Eller that linked Scott Rudin, executive producer of <u>Sister Act</u>, to Tri-Star. In particular, Eller stated: "Dawn Steel headed Columbia Pix in '89 and banished Rudin from the lot after he bid against the studio for '<u>Flatliners</u>'. One of the projects Rudin extracted from the mess was '<u>Sister Act</u>'."

15. At this point she began to research the names of the lead character during and after life in the

6

convent. She learned that Touchstone's Black nun was named Sister Mary.

Blakely's name in the convent was Sister Marie.

16. She learned that their nun's secular name was Deloris.

Blakely's secular name is Delois.

17. Online articles were read to determine if the plot matched her real life experiences that she shared with Tri Star during and after option contract negotiations.

18. She learned that Touchstone's Deloris had an intimate friendship with a notorious gangster.

Blakely had an intimate friendship with Bumpy Johnson, the notorious Harlem gangster.

19. She read that their Deloris was a singer who became choir director in the convent.

Blakely was a singer who trained as choir director in the convent.

20. Their Deloris was unconventional and constantly challenging the rules of the convent.

Blakely was unconventional and constantly challenged the rules of the convent.

21. Their Deloris hid in the convent from street gangsters who wanted to harm her.

Blakely hid her gangster friend Bumpy Johnson in the convent from street gangsters who wanted to harm him.

22. Their Deloris promoted the philosophy that the church had to get on the streets to serve the people. In one major scene from the movie, Deloris leads her fellow sisters onto the street to mingle with the street people.

Blakely's philosophy was that the church had to get on the streets to serve the people, hence the autobiography she shared with Tri Star was entitled <u>The Harlem Street Nun</u> -- Sister Marie (aka Delois Blakely) always mingled with and helped Harlem's street people.

23. Upon learning that <u>Sister Act</u> was carried from Tri-Star to Disney (Touchstone), Ms. Blakely began searching for an attorney to file a lawsuit on her behalf.

24. While the search was being pursued, she called on the Restitution Study Group (RSG), a community organization, to help her, and they reached

out to Disney.

25. On June 26, 2007, the RSG reached out to Alan Braverman, Sr. Executive VP and General Counsel for Disney, inquiring if they had created a compensation fund for Ms. Blakely, informing them of the Tri Star negotiations, and the similarities between their <u>Sister Act</u> character and story, compared to Ms. Blakely's.

26. By November 6, 2007, Disney had completed an investigation into the matter and concluded that the film was not based on Blakely's life story, that Paul Rudnick's <u>Sister Act</u> was an original story not based on any pre-existing material, that Ms. Blakely's story and experiences were "completely dissimilar to the original story portrayed in "Sister Act", and that any similarities between their character's names and Ms. Blakely's was coincidental.

27. By November 26, 2007, Sony Pictures (Tri Star's successor in interest), was contacted for Ms. Blakely by the RSG. Sony was informed that, based on Eller's Daily Variety article, <u>Sister Act</u> was taken from their Tri Star studio lot, that <u>Sister Act</u> contained elements from Ms. Blakely's life story shared

during negotiations with Tri Star, that Tri Star was eager for a option contract for rights to the story but never sent one, and that Ms. Blakely wished to be compensated for use of her story.

28. On January 8, 2008, Aimee Wolfson, Sony's Executive Vice President for Intellectual Property, sent an e-mail confirming that Tri Star did not have a property interest in Blakely's story because they never reached an agreement to option her life story rights, and that their files related to Scott Rudin do not reference Ms. Blakely or Harlem Street Nun.

29. Outreach continued to identify counsel to pursue litigation. News reports indicated that a Sister Act musical was being developed for Broadway.

30. On July 20, 2009, the New Yorker published an article by Paul Rudnick in which he explains how he conceived of the Sister Act story while lying on his couch one afternoon in the late nineteen-eighties. He was "trying to come up with an idea for a screenplay, and began thinking about drag", and ended up with Sister Act. He carried the story to Scott Rudin who set up a meeting with a Disney studio executive who

struck a deal.

31. This story conflicts with the 1992 <u>Daily Variety</u> story that claimed that Rudin took <u>Sister Act</u> with him from Tri Star when he was ejected from the lot.

32. On April 20, 2011, <u>Sister Act</u> the musical opened on Broadway in New York City produced by Stage Entertainment. On October 27, 2011, Stage Entertainment was contacted by the RSG with notice about the communications with Disney and Tri Star around Ms. Blakely rights regarding the Sister Act story. An invitation was extended to Stage Entertainment executives to meet with Ms. Blakely to discuss the sale of the rights to use her persona and life experiences in the Broadway musical <u>Sister Act</u>. Notice was also given that legal action was scheduled to be filed to secure justice for Ms. Blakely.

## PARTIES

33. Plaintiff Delois N. Blakely, is a citizen of New York, New York.

34. Defendant Walt Disney Motion Pictures Group, Inc. is owner of the film production label Touchstone

11

Pictures, and is located in Burbank, California.

35. Defendant Stage Entertainment does continuous and systematic business in New York, New York.

36. Defendant Sony Pictures Entertainment, parent company to Tri Star and Columbia Tri Star, is located in Culver City, California.

37. Defendant Scott Rudin is producer at Scott Rudin Productions, and is domiciled in New York, New York.

38. Defendant Paul Rudnick is a Citizen of New York, New York.

### FIRST CLAIM FOR RELIEF –

### BREACH OF CONTRACT

39. Plaintiff alleges that defendant Tri Star is liable for breach of contract. Ms. Blakely entered into an implied-in-fact contract following Tri Star's January 1988 letter indicating that an option contract would be forthcoming. Consistent with this understanding, Ms. Blakely and her agent Bertha Klausner continued to share information about Ms. Blakely's persona and life experiences with Tri Star via phone and letter. Such information was shared with

Tri Star with the expectation that the company would make payment to Ms. Blakely for use of her information and assistance in developing a movie based on Ms. Blakely's life experiences. Ms. Blakely alleges that she performed under the contract with Tri Star by providing them with both public and non-public information regarding her experiences, but Tri Star failed to make payment to her when <u>Sister Act I</u>, <u>Sister Act II</u>, and <u>Sister Act</u> the Broadway musical were produced using her information.

40. All of the named defendants are liable for breach of contract. To the extent that Tri Star transferred their ownership interests in the contract it had with Ms. Blakely to another party, that new party acquired the responsibility to make payment to Ms. Blakely. All subsequent parties using her persona and information are liable under breach of contract too.

## SECOND CLAIM FOR RELIEF –

## BREACH OF CONFIDENTIAL RELATIONSHIP

41. Plaintiff Blakely alleges that coincident with the contract, Tri Star entered into a fiduciary relationship with her and agreed to hold information she imparted to them in confidence. To the extent Tri Star disclosed that information to other parties including Paul Rudnick and Scott Rudin, without protecting Blakely's interests, Blakely claims the company's action were tortious.

## THIRD AND FOURTH CLAIMS FOR RELIEF –

## MISAPPROPRIATION AND UNJUST ENRICHMENT

42. Plaintiff alleges that defendants misappropriated information about her persona and life experiences without paying for it, and are unjustly enriched by any payment they secure from use of her information. The chain of appropriation started with Tri Star, who recognized the potential value in Blakely's unique story, and expressed immediate interest in optioning the story, but passed it on

14

without ensuring that Ms. Blakely got paid for it. It is not clear that Tri Star got paid for passing the story on, but according to Claudia Eller's Daily Variety article, Dawn Steel, the head of Tri Star who gave the story to Rudin, later joined Disney as co-executive producer of Sister Act II - for which she was paid.

43. The misappropriation chain grew to include Rudin who was paid as executive producer on Sister Act I. He later got paid to executive produce Sister Act II with Dawn Steel, even though, according to Daily Variety journalist Eller, Rudin and Steel hated each other and never spoke to each other during the project. Rudin knew or should have known Blakely was the original source of the nun persona and life experiences used in Sister Act, hence, he was obligated to pay her for her contributions.

44. Paul Rudnick enhanced the chain of misappropriation by claiming full credit and payment for the original story rather than sharing credit and payment with Ms. Blakely for her contributions to Sister Act.

45. Disney, having made upwards of $400 million off Sister Act, joined the misappropriation chain when they were made aware of Ms. Blakely's role in development of

15

Sister Act, yet failed to make payment to her, and failed to secure her permission to continue exploiting the story.

46. Stage Entertainment joined the misappropriation chain too. They are unjustly enriched by profits they are earning in their successful Broadway production of Sister Act. They have only recently been informed of their role in the unauthorized use of Ms. Blakely's life story; however, they have been given notice that they must pay her for the right to continue using her persona and life experiences for commercial purposes.

## FIFTH CLAIM FOR RELIEF –

### FALSE REPRESENTATION

47. Plaintiff Blakely alleges that all defendants are engaged in false representation in violation of the Lanham Act, section 43(a) due to their use of names for their nun that are confusingly similar to her own, as stated in paragraphs 15 and 16.

48. Enhancing the likelihood of confusion is the fact that their lead nun character is Black, like Blakely, and has numerous other characteristics that

16

match Ms. Blakely's, as set forth in paragraphs 18 through 22.

49. Plaintiff alleges that it is also likely that the similar names combined with other listed similarities could deceive others to think she is affiliated, connected, or associated with Disney's films or Stage Entertainment's musical productions. The consequence of this has already impacted Blakely. In her efforts to share or exploit her own story, Ms. Blakely is burdened with proving that her true story is not copied from Disney's <u>Sister Act</u>.

SIXTH CLAIM FOR RELIEF –

NEW YORK STATE RIGHT OF PRIVACY LAW

50. Plaintiff alleges that all defendants are violating her right of publicity pursuant to NY CLS Civ R §50 by using her portrait or picture and names in the film <u>Sister Act</u> for the purposes of trade, without having first obtained her written consent. The terms "portrait" or "picture" are not meant literally, rather, they are interpreted as the

"essence of a person".

51.   In the matter at hand, defendants have misappropriated the essence of Delois Blakely for commercial purposes.  Not only has her persona and life experiences been captured and exploited for enormous financial gain by defendants, but her convent and secular names have been misappropriated too.  Defendants have earned over half a billion dollars from such commercial use, and are poised to increase their profits exponentially through multi-media and world-wide stage productions.  They have never obtained permission from Ms. Blakely for such use and they have never compensated her.

### RELIEF

52.   Wherefore, plaintiff Delois Blakely prays that the Court issue an injunction enjoining defendants from continued violation of her right to publicity, and request that a jury grant her damages pursuant to NY CLS Civ R §51 for her injuries including loss of wealth accumulated by others through violation of

this right, and that the Court award plaintiff such additional or alternative relief as may be just, proper, and equitable including costs.

Respectfully submitted,

*Delois Blakely*
Delois Blakely

477 West 142nd Street

Harlem, NY 10031

PRO SE

Dated: 11/3/2011